MARY ANN HASTINGS *vs.* CALVIN AIKEN & another.

The enlarging and fitting up as a livery stable, in Boston, within one hundred and seventy feet of a church, of a dwelling-house which was built before the passing of the *St.* of 1810, *c.* 124, is an " erecting " of a livery stable within the meaning of that statute, and, while the building is used and improved as a livery stable, renders the owner or keeper thereof liable to the penalties imposed by that act.

The simple repeal of a repealing statute revives the original statute; even where the original statute was repealed by implication only.

The statute of 1810, c. 124, imposing a penalty of one hundred dollars a month on the owner or keeper of any livery stable erected and used in Boston within one hundred and seventy feet of a church, is not repealed by Rev. Sts. *c.* 58, § 4, reënacting *St.* 1796, *c.* 88, § 5, and imposing a penalty of fifty dollars a month on any person who " shall occupy or use any building whatever in any maritime town, for the business of a sail maker or rigger, or keeper of a livery stable, except in such parts of the town as the selectmen thereof shall direct."

ACTION OF TORT on the *St.* of 1810, *c.* 124, (which is copied in the margin,*) to recover eleven penalties of one hundred dollars each, for erecting a livery stable, and using and improving the same for eleven months, from November 1850 to September 1851, both inclusive, within one hundred and seventy feet of the Essex Street Church, a church erected and used for the public worship of God.

The following facts were agreed by the parties: The defendants, after the passage of the statute of 1810, enlarged and

* An Act to prevent Livery Stables being erected in certain places in the town of Boston.

SECT. 1. From and after the passing of this act, no building shall be erected within the town of Boston, and used and improved as a stable, for the taking in and keeping horses or chaises or other carriages upon hire or to let, commonly called livery stables, within one hundred and seventy feet of any church or meeting-house, erected for the public worship of God. *Provided, however,* that this act shall not be so construed as to prevent the finishing of any stable which has been in part erected, if the completion thereof shall be approved by the selectmen of the town of Boston.

SECT. 2. For any offence against the provision of this act, the owner or owners, keeper or keepers of such building shall forfeit and pay the sum of one hundred dollars for every calendar month during which the same shall be so used and improved, to be recovered by action of debt, one half thereof to enure to the use of the poor of the town of Boston, and the other half thereof to him or them who shall sue for the same."

altered and fitted up as a stable a dwelling-house, which ever since 1809 had stood within one hundred and seventy feet of the Essex Street Church, at the corner of Essex Street and Brimner Place, in which place the plaintiff resided. And the defendants continued to use the premises as a stable during the time mentioned in the declaration. In this stable the defendants kept two hacks and horses to let, and took in and kept horses, chaises and other vehicles, upon hire. It was agreed that if the court should be of opinion, upon these facts, that this action could be maintained, judgment should be rendered for the plaintiff for the amounts of the penalties sued for ; or that the court might make such other disposition of the case as the law should require.

P. W. Chandler, for the plaintiff.

J. B. Robb, for the defendants. 1. The defendants have not " erected " a stable within the meaning of the St. of 1810. That statute, being highly penal, is to be construed with the utmost strictness. 2. The St. of 1810 was impliedly repealed by St. 1814, c. 73, entitled " an act for regulating public stables throughout the Commonwealth," which by its terms was to " be and con tinue in force in the town of Boston," and provided that " no building hereafter erected shall be used as a public or livery stable, or for the keeping or storing of hay, unless the same shall be at least one hundred and thirty feet distant from any meeting house or other public edifice ; " and imposed on any person so using or occupying a building a penalty of twenty dollars a week for every week he should so occupy the same. And the St. of 1810 was not revived by St. 1814, c. 156, repealing St. 1814, c. 73. The general rule, that the repeal of a statute which had repealed another of itself revives the first statute, should be limited to cases where the second statute repeals the first in express terms. 3. The St. of 1810 is repealed by the Rev. Sts. c. 58, § 4, imposing a penalty of fifty dollars a month on any person who " shall occupy or use any building whatever, in any maritime town, for the business or employment of a sailmaker or rigger, or keeper of a livery stable, except in such parts of the town as the selectmen thereof shall direct."

DEWEY, J.   The facts admitted by the parties bring the case within the statute of 1810, *c.* 124.   Although not entirely a new building, yet it was a building remodelled, extended in size, and fitted up for a new purpose, and that designed and adapted for use " as a stable for the taking in and keeping horses upon hire or to let, commonly called a livery stable."

The question then arises, whether that statute is repealed, or now exists in full force.   It is insisted on the part of the defendant that the *St.* of 1814, *c.* 74, has effected its repeal.   This latter statute made new provisions upon the same subject.   It was less onerous in the restriction as to the distance from any church or meeting-house, prescribing one hundred and thirty feet instead of one hundred and seventy feet, and also imposed a somewhat smaller penalty for the violation of the statute. In terms, it did not repeal the statute of 1810 ; and such repeal, if effected by it, was by implication merely, and because it was a later statute on the same subject and containing provisions inconsistent with the former statute.   The statute of 1814, *c.* 74, being in direct terms applicable to Boston, and having the provisions above stated, was inconsistent with *St.* 1810, *c.* 24, and did therefore by implication operate to repeal it.

But the statute of 1814, *c.* 74, was directly repealed in the course of a few months after its enactment, by *St.* 1814, *c.* 156. The further inquiry here arises as to the effect of the repeal of *St.* 1814, *c.* 74.   Did its repeal revive the act of 1810, *c.* 124 ? That such is the effect of the repeal of the repealing act has become the settled law of this commonwealth.   It was so held in *Commonwealth* v. *Mott*, 21 Pick. 502.   The question was more fully considered, and with the like result, in the case of *Commonwealth* v. *Churchill*, 2 Met. 118.   It is a part of the common law, and is thus stated in 1 Bl. Com. 90 : " If a statute, that repeals another, is itself repealed afterward, the first statute is hereby revived, without any formal words for that purpose." See also 2 Dwarris on Statutes, 675.   This rule has so long existed and been so often acted upon, that it must be changed, if at all, by a legislative act to that effect.

It was suggested at the argument, that a different rule might

be applicable to the statute under consideration, as its repeal was by implication only. But its repeal in the latter case is wholly effected by the enactment of a subsequent statute, and that statute being repealed, there is no longer any statute incensistent with the former. We cannot perceive any sufficient reason for taking a distinction between the cases of a repeal of a later statute directly repealing a former one, and that of a repeal of a later statute repealing the former by implication. In both cases, the repealing statute being repealed, the former statute remains.

The further question is, whether the Rev. Sts. *c.* 58, § 4, have not, by the enactment on this subject of livery stables, embraced the cases within the statute of 1810, *c.* 124, and so virtually repealed that statute? In terms, the provision of the Rev. Sts. seems to apply to towns; the license is to be granted by the selectmen, and there is no provision for any action by the board of aldermen or common council. But if that were no sufficient objection, the further answer is, that the two acts are not conflicting or inconsistent with each other; one regulating especially the erecting of such stables in the proximity of any church or meeting-house in Boston; and the other making provision of a more general character, and in reference to the security and convenience of the public generally. It is to be further remarked that the provision of the Rev. Sts. *c.* 58, § 4, is a reënactment of the more ancient statute of 1796, *c.* 88, § 5. Thàt statute was in operation when the *St.* of 1810, *c.* 124 was enacted, making special provisions for Boston. The act of 1810 was deemed ancillary to the other, and not inconsistent with it, as we must suppose. The act of 1796, *c.* 88, has been brought forward as a part of the revised statutes, and in this form its provisions have the same relation to the act of 1810, *c.* 124 which they had before the revised statutes.

Upon the whole matter, the court are of opinion, that the plaintiff is entitled to maintain her action, and recover the penalties for the violation of the provisions of *St.* 1810, *c.* 124.

*Judgment for the plaintiff.*